JUDGE FORREST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 6580

------------------------------------------------------------------x

ROSLYN LANCE,

                                    Plaintiff,

            -v-

THE CITY OF NEW YORK, New York City Police
Department Officer ("P.O.") JOSEPH PRITCHARD
(Shield No. 937311), P.O. JOHN DOEs 1 through 10,
(the names John Doe being fictitious, as the true names
and shield numbers are not presently known), in their
individual capacities,

                                    Defendants.

------------------------------------------------------------------x

**COMPLAINT
AND DEMAND
FOR A JURY TRIAL**

Index No. 13-CV-____

RECEIVED
SEP 17 2013
U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiff ROSLYN LANCE, through her attorney DAVID B. RANKIN of Rankin &

Taylor, PLLC as and for her complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and

   Fourteenth Amendments of the Constitution of the United States, through the Civil Rights

   Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, with pendant claims under the laws

   of the State of New York.

2. Plaintiff ROSLYN LANCE's rights were violated when officers of the NEW YORK CITY

   POLICE DEPARTMENT ("NYPD") unconstitutionally and without any legal basis used

   unlawful force against her. By reason of defendants' actions, including their unreasonable

   and unlawful seizure of her person, she was deprived of her constitutional rights.

3. Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff's claim arose in the Southern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

7. Consistent with the requirements of New York General Municipal Law § 50-e, Ms. LANCE filed a timely Notice of Claim with the New York City Comptroller on or about May 21, 2013, within 90 days of the accrual of her claims under New York law. Thus, this Court has supplemental jurisdiction over Ms. LANCE's claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

8. Ms. LANCE's claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

9. Plaintiff ROSLYN LANCE ("LANCE") was at all times relevant to this action a resident of the County of Kings in the State of New York.

10. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

11. NYPD Officer ("P.O.") JOSEPH PRITCHARD (Shield No. 937311) ("PRITCHARD"), and P.O. JOHN DOE's 1 through 10 are and were at all times relevant herein, officers, employees and agents of the NYPD.

12. The individual defendants are being sued herein in their individual capacities.

13. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

14. The true names and shield numbers of defendants P.O. JOHN DOE's 1 through 10 are not currently known to the plaintiff.[1]  However, they were employees or agents of the NYPD on the date of the incident.  Accordingly, they are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k.  The Law Department, then, is hereby put on notice (a) that plaintiff intends to name said officers as defendants in an amended pleading once the true names and shield numbers of said defendants become known and (b) that the Law Department should immediately begin preparing their defense in this action.

## STATEMENT OF FACTS

---

[1]      By identifying said defendants as "John Doe" or "Richard Roe," plaintiff is making no representations as to the gender of said defendants.

3

15. Ms. LANCE was maliciously injured by P.O. PRITCHARD as he unlawfully arrested her outside of a nightclub, Culture Club, at 22 West 39th Street in the County and State of New York.

16. Ms. LANCE arrived at the nightclub at approximately 12:00 A.M. on March 9, 2013.

17. Ms. LANCE checked her coat and spoke with her friends at the club before sitting in a booth for the night.

18. Ms. LANCE witnessed a fight in the club, and in response, at approximately 3:15 A.M., she retrieved her coat from the coat check area.

19. As she was putting on her coat, she was stopped by a bouncer.

20. The bouncer pushed Ms. LANCE out of the club and informed her that he would "BREAK HER FACE."

21. As the bouncer pushed Ms. LANCE out of the club, her hat fell off outside the club's front door.

22. As Ms. LANCE bent down to retrieve her hat from the ground, P.O. PRITCHARD grabbed her at her shoulders and upper arms and maliciously turned her around and shoved her against the gate a few feet from the front door of the club.

23. P.O. PRITCHARD then grabbed Ms. LANCE and slammed her face repeatedly to the hood of a squad car, during which time Ms. LANCE stated, "I'm not resisting you."

24. P.O. PRITCHARD then barraged Ms. LANCE with racial and gendered slurs, calling Ms. LANCE a "FUCKING DYKE," "BLACK DYKE," and "NIGGER," during which time defendant P.O. PRITCHARD pushed her arms up to place handcuffs on and arrested Ms. LANCE.

4

25. Throughout this incident, approximately six additional defendants P.O. JOHN DOE 1 through 6 stood by near the front door of the nightclub, all wearing their police uniforms.

26. Defendant P.O. PRITCHARD pushed Ms. LANCE into the back seat of the squad car and proceeded to straddle Ms. LANCE and pressed her forearms against her neck for about 30 seconds, informing her that he was going to kill her.

27. A friend of Ms. LANCE witnessed defendant P.O. PRITCHARD's actions against her from the sidewalk outside the club front door, and stated, "Why are you doing that? She's a girl."

28. Ms. LANCE was then transported by defendant P.O. PRITCHARD to the NYPD's 40th Precinct at 357 West 35th Street, during which time defendant P.O. PRITCHARD berated Ms. LANCE with insults, stating she was "A FUCKING ANIMAL" and asking "WHERE'S THE DRUGS? YOU PEOPLE ALWAYS HAVE DRUGS."

29. In response to P.O. PRITCHARD, Ms. LANCE told P.O. PRITCHARD that she did not have any drugs.

30. After arriving at the precinct, defendant P.O. PRITCHARD invasively patted down Ms. LANCE's entire body twice, shoving his hands into her pockets and running his hands along the inseam of her pants.

31. Ms. LANCE was released from the precinct with a desk appearance ticket on the charges of Disorderly Conduct (P.L. § 240.20).

32. P.O. PRITCHARD falsely swore to allegations against Ms. LANCE.

33. Ms. LANCE appeared in court May 30, 2013, and received an Adjournment in Contemplation of Dismissal.

34. Ms. LANCE spent approximately three (3) hours in the defendants' custody as a result of her arrest.

35. As a result of P.O. PRITCHARD's use of excessive force against her, Ms. LANCE experienced severe swelling of both wrists and bruising to her left hand, which turned blue after several days following the arrest.

36. Ms. LANCE immediately sought medical treatment following her release at Interfaith Medical Hospital at 1545 Atlantic Avenue in Kings County of the State of New York where she received medical treatment for injuries to her head, face, back, wrists, right middle finger, and entire left hand.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
**(Against P.O. PRITCHARD)**

37. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

38. Defendants, under color of state law, subjected the plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of her rights, privileges and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of her person; (b) freedom from arrest without probable cause; (c) freedom from false imprisonment; (d) freedom from the lodging of false charges against her by police officers; (e) freedom from having police officers fabricate evidence against her; and (f) freedom from retaliatory arrest, under the First and Fourteenth Amendments,

39. Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

**SECOND CLAIM**
**_MONELL_ CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983**
**(Against the City of New York)**

40. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

41. P.O. PRITCHARD's acts and omissions described above were carried out pursuant to the CITY's overlapping customs and practices which were in existence on March 9, 2013 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the CITY and its agency, the NYPD.

42. The acts complained of were carried out by P.O. PRITCHARD in his capacity as a police official pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

43. The aforementioned custom and practice of the CITY and the NYPD include, but are not limited to, the use of excessive force on arrestees who offer no resistance or are already restrained, controlled and compliant, as plaintiff was in this case.

44. The existence of aforesaid unconstitutional custom and well-settled practice may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY:

    a. Tyler v. City of New York, 12-CV-1975 (JBW) (CLP) (E.D.N.Y.) (in retaliation for speech protected by the First Amendment, two NYPD officers sweep the legs out from under an already-handcuffed arrestee, causing the top of his head to collide with the pavement, causing a substantial laceration which required nearly a dozen stitches and staples);

    b. McKie v. City of New York, 12-CV-2070 (JG) (VVP) (E.D.N.Y.) (NYPD officers use pepper spray upon an individual who was under arrest, was prone and compliant with officers commands, and whose arm was pinned beneath his and the officers' combined weights during the entire use of force);

    c. Gad Alla v. City of New York, 11-CV-892 (FB) (RLM) (E.D.N.Y.) (NYPD officer uses catastrophic force to the side of an arrestee's head, even though the arrestee was

compliant and prone, and even though multiple officers had their hands on his back, controlling his movements);

d. <u>Thompson v. City of New York</u>, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.) (while arrestee is handcuffed and compliant, NYPD officers use their Asp, or expandable metal baton, to beat plaintiff and also apply pepper spray to his face without cause);

e. <u>Zabala v. City of New York</u>, 3771/2010 (Sup. Ct., Kings Co.) (NYPD officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered and was surrounded on all sides by police officers);

f. <u>Ashe v. City of New York</u>, 09-CV-9696 (GBD) (THK) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon two arrestees even though they were both already handcuffed and compliant);

g. <u>Moise v. City of New York</u>, 09-CV-9855 (DC) (JLC) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon a compliant arrestee while he was already in handcuffs); and

h. <u>King v. City of New York</u>, 07-CV-4757 (FB) (JO) (E.D.N.Y.) (NYPD officer rear-cuffs compliant arrestee for possession of marijuana and places him prone on the pavement, then kicks him in the face and shoves his face into pavement).

45. Moreover, the Civilian Complaint Review Board ("CCRB") is a CITY agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[2]

46. When it does, however, NYPD Police Commissioner Raymond Kelly controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s).

---

[2]    In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See*, CCRB Jan.-Dec. 2007 Status Report at p. 19, *available at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted <u>de facto</u> policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, <u>inter alia</u>, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

47. Since 2005, during Commissioner Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions."

48. Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008.

49. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[3]

50. As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007.

51. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[4]

52. The existence of the above-described well-settled and widespread custom and practice – of using unnecessary and unreasonable force against arrestees who are adequately restrained or even handcuffed – is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the CITY, including, without limitation, Commissioner Kelly.

53. The defendants' actions herein resulted from and were taken pursuant to the above-mentioned well-settled and widespread customs and practices of the CITY, which are

---

[3]     Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

[4]     Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

implemented by members of the NYPD. They do so with the knowledge and approval of their supervisors, commanders and Commissioner Kelly who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and the NYPD's Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

54. All of the foregoing acts by defendants deprived plaintiff of federally protected rights, including but limited to the constitutional rights enumerated above.

55. Defendant CITY knew or should have known that the acts alleged herein would deprive plaintiff of her rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

56. Defendant CITY is directly liable and responsible for the defendants' acts because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline him – along with scores of other NYPD officers – and because it repeatedly and knowingly failed to enforce the rules and regulation of defendant CITY and to require compliance with the Constitution and laws of the United States.

57. Despite knowledge of such practice and/or custom, these supervisory and policy-making officials of the NYPD and the CITY, including Commissioner Kelly, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage

in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

58. The aforementioned custom of using unprovoked force against arrestees who are adequately restrained or even handcuffed is evidenced by the acts described above.

59. Specifically, pursuant to the aforementioned practice and/or custom, defendant P.O. PRITCHARD felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff, apparently without fear that such use of force would result in disciplinary action or termination by the NYPD.

60. Plaintiff's injuries were a direct and proximate result of defendant CITY and the NYPD's well-settled and widespread custom and practice at issue in this litigation.

61. Defendants' actions resulted from and were taken pursuant to the well-settled and widespread custom and practice of the CITY, which implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force against persons who are adequately restrained and pose no threat to officer safety.

### THIRD CLAIM FOR RELIEF
### ASSAULT AND BATTERY
### UNDER THE LAWS OF THE STATE OF NEW YORK
### (Against all Defendants)

62. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

63. By the actions described above, defendants did inflict assault and battery upon plaintiff. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

64. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### FOURTH CLAIM FOR RELIEF
### FALSE ARREST AND FALSE IMPRISONMENT
### UNDER THE LAWS OF THE STATE OF NEW YORK
#### (Against all Defendants)

65. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

66. By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

67. As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### FIFTH CLAIM FOR RELIEF
### ABUSE OF PROCESS
### UNDER THE LAWS OF THE STATE OF NEW YORK
#### (Against all Defendants)

68. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

69. By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm the plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to the plaintiff, which was outside the legitimate ends of the process. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

70. As a result of the foregoing, the plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

#### JURY DEMAND

71. Plaintiff demands a trial by jury in this action on each and every one of her damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a.   That she be compensated for violation of her constitutional rights, pain, suffering, mental anguish, and humiliation; and

b.   That she be awarded punitive damages against the individual defendants; and

c.   That she be compensated for attorneys' fees and the costs and disbursements of this action; and

d.      For such other further and different relief as to the Court may seem just and proper.

Dated:      New York, New York
            September 17, 2013

                              Respectfully submitted,

                        By:
                              David B. Rankin
                              Rankin & Taylor, PLLC
                              *Attorneys for the Plaintiff*
                              11 Park Place, Suite 914
                              New York, New York 1007
                              Ph: 212-226-4507

14